# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| CONSOLIDATED TRANSACTION PROCESSING LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BARNES & NOBLE BOOKSELLERS, INC.,<br><br>    Defendant. | **Civil Action No. 4:20-cv-00605**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Consolidated Transaction Processing LLC ("CTP" or "Plaintiff"), for its Complaint against Defendant Barnes & Noble Booksellers, Inc. (referred to herein as "B&N" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

2. Plaintiff is a limited liability company organized under the laws of the State of Nevada with a place of business at 356 Greenwood Court, Villanova, Pennsylvania 19085.

3. Upon information and belief, B&N is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 122 Fifth Avenue, New York, NY 10011. Defendant can be served with process through its registered agent, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701.

4. This Court has personal jurisdiction over B&N at least because B&N regularly conducts and transacts business, including infringing acts described herein, in this District.

5. Defendant conducts business in Texas, directly or through intermediaries and offers products or services, including those accused herein of infringement, to customers, and potential customers located in Texas, including in the Eastern District of Texas, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

6. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b). B&N maintains an established place of business in the state of Texas and the Eastern District of Texas, specifically including B&N stores at 2201 Preston Road, Suite E, Plano, Texas 75093 and 801 West 15th Street, Suite E, Plano, Texas 75075.

9. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process or the Texas Long Arm Statute, because Defendant conducts substantial business in this forum, including: (i) making, using, selling, importing, and/or offering for sale one or more websites or web addresses including, but not limited to barnesandnoble.com, stored and/or hosted on one or more servers owned or under the control of B&N (the "Accused Instrumentalities"); or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to citizens and residents in Texas and in this District.

## BACKGROUND

### The Inventions

10. Robert S. Alvin is the inventor of U.S. Patent Nos. 8,712,846 ("the '846 patent") and 8,396,743 ("the '743 patent"), together the "patents in suit."

11. A true and correct copy of the '846 patent is attached as Exhibit 1.

12. A true and correct copy of the '743 patent is attached as Exhibit 2.

13. The patents in suit resulted from the pioneering efforts of Mr. Alvin (hereinafter "the Inventor") in the area of electronic transaction processing over a communications network. These efforts resulted in the development of methods and apparatuses for internet transactions based on user-specific information and sending targeted product offerings based on personal information in the late 1990s. At the time of these pioneering efforts, most commercially available electronic commerce (e-commerce) technology used the Internet and web pages as an advertising medium to replace catalog or infomercial type advertising. Moreover, such e-commerce businesses operated by maintaining their own inventory in warehouses, leading to higher costs. (*See* '846 patent at 2:63-3:2; 3:8-14.)

14. For example, the Inventor developed methods and systems to offer targeted products over a communications network. This is achieved by receiving product data for a plurality of products from a plurality of distributors for the products, receiving customer data from a plurality of customers, comprising personal information about the customers, and using the data to generate at least one user-specific product offering from the plurality of products. The user-specific product offerings are then conveyed to customers using automated messages. (*See* '846 patent at 3:44-52.)

### Advantage Over the Prior Art

15. The patented inventions disclosed in the patents in suit provide many advantages over the prior art and improved the operations of business transactions conducted over the Internet. (*See* '846 patent at 1:18-20.)

16. One advantage of the patented inventions is that they enable dynamically generating a catalog of products and building a product database comprising products from multiple distributors. The product information is transmitted automatically and continually updated throughout the day, or even in real time, as product information becomes available from the distributors. (*See* '846 patent at 5:22-50.)

17. Another advantage of the patented inventions is that the product information is used to generate multiple catalogs from a single system and dynamically display user-specific interfaces. For instance, a student may be shown a catalog of products appropriate for students with academic pricing, while a business person may be shown a catalog of products appropriate for business and with available corporate discounts. (*See* '846 patent at 5:61-6:16.) Further, pricing for each product may be generated dynamically by an intelligent rule-based algorithm, (such as an artificial intelligence program), factoring in the distributor's price, any specials, and cost or profit margins. (Id. at 6:17-29.)

18. A further advantage of the patented inventions is that they enable the use of stored customer information to be used for generating customized portfolios based on purchase patterns of individuals to provide targeted advertising, purchase incentives, specialized promotions, or competitive pricing. (*See* '846 patent at 5:7-20.)

19. The use of a centralized database to store product data from the plurality of distributors—each of which offers similar products for sale—provides the ability to select from a distributor based on various criteria, such as availability, price, shipping speed, or profit margins.

('846 patent at 9:23-58.) Prior systems using separate databases did not have the capability of selecting a distributor as each product was only available from one distributor. Further, centralization of the product database provides increased database security and consistency of data, as no individual distributor can modify the database contents (other than updating its own inventory and pricing).

20. Even though prior systems accepted a shopper's personal information and may have stored it in a database, they did not use any stored personal information to dynamically generate catalogs with user-specific product offerings of products from the plurality of distributors. Instead, prior systems offered static catalogs to each prospective shopper that simply listed the products available for sale from each individual distributor, without aggregating or processing the catalog information in any manner. The use of a single centralized database, as taught by the '846 and '743 patents, improved the computerized backbone to allow a merchant to use product data and customer information together to provide a shopper with a more personalized shopping experience.

21. The system described by the '846 and '743 patents thus enables a wider range of product offerings shown to a customer than a system offering products solely from a single merchant. For instance, the product offerings may take into account variations in price and availability, shipping speed, each distributor's desired profit margin, or an existing relationship between the customer and the distributor. ('846 patent at 9:47-58.) By selecting from a plurality of distributors, the '846 and '743 patents provide increased access to the marketplace for a wider range of distributors who may otherwise be excluded in favor of more established entities.

22. Because of these significant advantages that can be achieved through the use of the patented invention, CTP believes that the patents in suit present significant commercial value

for companies like B&N. Indeed, business transactions over the Internet are more commonplace than ever, and with the number of merchants selling products online, it is crucial that businesses distinguish themselves by the extent of automation and user-specific customization they provide during the online shopping experience. These advantages are taught by the inventions of the patents in suit.

### Technological Innovation

23. The patented inventions disclosed in the patents in suit resolve technical problems related to Internet transactions based on user-specific information, particularly problems related to the utilization of product data from a plurality of distributors and personal information of customers in generating electronic catalogs of user-specific product offerings. As the patents in suit explain, one of the limitations of the prior art as regards electronic transaction processing technology was that most e-commerce retail businesses still operated by maintaining an inventory in warehouses, as they used the Internet mainly as an advertising medium and to replace catalog or infomercial type advertising. (*See, e.g.*, '846 patent at 2:63-3:14.)

24. The claims of the patents in suit do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the patents in suit recite inventive concepts that are deeply rooted in computerized transaction processing, advertising, and product offering technology, and overcome problems specifically arising out of how to create targeted advertising by dynamically generating electronic catalogs from a plurality of products based on a user's personal information.

25. In addition, the claims of the patents in suit recite inventive concepts that improve the functioning of electronic catalogs and payment authorization systems used for electronic

transaction processing, particularly as they recite the use of a user's personal information to dynamically generate user-specific product offerings, authorize distributors to ship products directly to the user following successful payment processing, and send automated messages to customers containing order information.

26. Moreover, the claims of the patents in suit recite inventive concepts that are not merely routine or conventional use of advertising, product offering, and transaction processing. Instead, the patented inventions disclosed in the patents in suit provide a new and novel solution to specific problems related to automating the process of targeted advertising, targeted product offering, and retail sales transaction processing by dynamically utilizing customer data and product data. The claims of the patents in suit thus specify how customer data and product data are manipulated to yield a desired result.

27. And finally, the patented invention disclosed in the patents in suit does not preempt all the ways that user-specific information may be used to improve internet transactions, nor do the patents in suit preempt any other well-known or prior art technology.

28. Accordingly, the claims in the patents in suit recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,712,846

29. The allegations set forth in the foregoing paragraphs 1 through 28 are incorporated into this First Claim for Relief.

30. On April 29, 2014, the '846 patent, entitled "Sending Targeted Product Offerings Based on Personal Information" was duly and legally issued by the United States Patent and Trademark Office.

31. CTP is the assignee and owner of the right, title and interest in and to the '846 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

32. Upon information and belief, B&N has directly infringed at least claims 1, 3, and 4 of the '846 patent by making, using, providing, and/or causing to be used the Accused Instrumentalities, as set forth in detail in the attached preliminary and exemplary claim charts provided in Exhibit 3.

33. CTP has been harmed by B&N's infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,396,743

34. The allegations set forth in the foregoing paragraphs 1 through 33 are incorporated into this Second Claim for Relief.

35. On March 12, 2013, the '743 patent, entitled "Sending Targeted Product Offerings Based on Personal Information" was duly and legally issued by the United States Patent and Trademark Office.

36. CTP is the assignee and owner of the right, title and interest in and to the '743 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

37. Upon information and belief, B&N has directly infringed at least claims 1 and 4 of the '743 patent by making, using, providing, and/or causing to be used the Accused Instrumentalities, as set forth in detail in the attached preliminary and exemplary claim charts provided in Exhibit 4.

38. CTP has been harmed by B&N's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CTP demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, CTP demands judgment for itself and against B&N as follows:

A. An adjudication that B&N has infringed the '846 and '743 patents;

B. An award of damages to be paid by B&N adequate to compensate CTP for B&N's past infringement of the patents in suit, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of CTP's reasonable attorneys' fees; and

D. An award to CTP of such further relief at law or in equity as the Court deems just and proper.

Dated: August 7, 2020

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin (No. 4241)
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
tdevlin@devlinlawfirm.com

*Attorneys for Plaintiff*
*Consolidated Transaction Processing LLC*